UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD NELSON, | |
| Plaintiff, | CASE NO. C10-5328BHS |
| v. | |
| BNSF RAILWAY COMPANY, a Delaware corporation | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

This matter comes before the Court on Defendant BNSF Railway Company's ("BNSF") Motion for Summary Judgment. Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby GRANTS the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 24, 2011, BNSF moved for summary judgment. Dkt. 12. On March 21, 2011, Plaintiff Richard Nelson ("Nelson") opposed the motion. Dkt. 16. On March 25, 2011 BNSF replied. Dkt. 19.

## II. FACTUAL BACKGROUND

Nelson brings this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, for his alleged shoulder injury and cumulative trauma to his back. *See, e.g.,* Dkt. 1 (Complaint).

On April 21, 2009, Nelson and BNSF attempted to mediate this case to settlement. Dkt. 13-2 at 2-4. Fred Bremseth represented Nelson and participated in the mediation by phone. *See, e.g.,* Dkt. 20-4 at 17.

As a result of the mediation, which did not result in settlement, mediator Mike Barcott memorialized the following agreement of the parties:

> 1. The Plaintiff will dismiss the lawsuit presently pending in the U.S. District court for the Western District of Washington without prejudice;
> 2. Mr. Nelson will attend the evaluation currently scheduled for April 30, 2009 concerning his return to work. It is understood that this evaluation is intended to address Mr. Nelson's abilities following his stroke and is not related to his injury claim arising from the accident of May 4, 2005;
> 3. Following that evaluation Mr. Nelson and Danny Thomassen [BNSF claims manager] will engage in settlement discussions without the need for counsel for either Mr. Nelson or BNSF *in attendance* during those discussions. Mr. Nelson and Mr. Thomassen will exercise their best efforts to settle the case between themselves;
> 4. If the case is not resolved amicably on or before June 1, 2009[,] plaintiff will have until July 1, 2009, *to refile* his injury action arising out of his accident on May 4, 2005 without the defendant raising the statute of limitations as a defense. By this agreement it is specifically understood that if said lawsuit is filed on or before July 1, 2009 there will be no statute of limitations defense raised as to the May 4, 2005 accident . . . . If said lawsuit is not filed on or before July 1, 2009, but is subsequently filed, [BNSF] may raise a statute of limitations defense as warranted by the law and facts. The tolling agreement reached herein extends only through July 1, 2009.
>
> ***
>
> By your counter signatures to this letter *you agree to these terms on behalf of your clients.*

Dkt. 13-2 at 2-4 (emphasis added). The attorneys for both Nelson and BNSF signed the agreement on their clients' behalf. *Id.* at 3-4.

Nelson now asserts that he did not agree to dismiss his lawsuit at the mediation (Dkt. 17-1 at 15, 20:9-15) and he reportedly was not involved in the discussions that led to the terms set forth in the agreement entered into following mediation, see above. Dkt. 17-1 at 17. Nelson claims that he only agreed to work directly with Thomassen to negotiate a settlement. Dkt. 17-1 at 16, 21:18-25. Nelson stated in his declaration that if a settlement could not be reached, his case would go to trial. Dkt. 17-1 at 38, 59:16-22.

On June 22, 2009, Bremseth contacted Thomassen requesting an extension of the July 1, 2009, settlement deadline. Dkt. 21-1 at 3-4. Thomassen replied and agreed to a 30-day extension and requested that Bremseth formalize the extension with BNSF's counsel. *Id.* The extension was agreed to by both parties' counsel. Dkt. 13-2 at 6.

Thomassen and Nelson were never able to settle the case.

On July 20, 2009, Bremseth sent an email to Thomassen asking whether he needed to refile Nelson's complaint or whether the case would be resolved by the new deadline of July 31, 2009. That same day Thomassen replied via email as follows:

> Fred:
>       I would love to get this case settled as much as you: the last demand I had from Rick was $400k (GROSS). He asked me to have a check ready for him in the amount of $375 k so he could drop by my office and pick it up. *I do not think we have any choice but for you to refile it.* I do appreciate your gesture to allow us some time to explore a more direct resolution of this case but it appears our efforts were futile.

Dkt. 21-1 at 2 (emphasis added).

The parties did not settle the case before July 31, 2009. *See, e.g.,* Dkt. 20-1 at 14. Bremseth did not properly refile Nelson's lawsuit on or before July 31, 2009 in accord with the terms of the agreement. Dkt. 17-2 at 28, 33:20-22. Instead, Bremseth caused BNSF to be served an unfiled complaint on August 3, 2009. Dkt 20-3 at 6-7. On August 17, 2009, BNSF caused an unfiled notice of appearance to be mailed to Nelson's counsel. Dkt. 20-3 at 8. On August 20, 2009, BNSF's counsel sent Bremseth a letter requesting the cause number and case scheduling order for *Nelson v. BNSF* (King County Superior Court) at his soonest convenience. Dkt. 13-2 at 8. Bremseth never formally refiled Nelson's case.

On May 7, 2010, represented by new counsel, Nelson refiled his action against BNSF. *See* Complaint.

### III. DISCUSSION

BNSF moves this Court to grant summary judgment and to dismiss Nelson's claim as a matter of law because Nelson's claims are barred by the statute of limitations applicable in FELA cases. Dkt. 12.

### A.   Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving

party. The nonmoving party may not merely state that it will discredit the moving

party's evidence at trial, in the hopes that evidence can be developed at trial to support

the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at

255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing

facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Statute of Limitations under FELA**

FELA provides certain railroad employees with a private cause of action for

job-related injuries caused by an employer's negligence. 45 U.S.C. §§ 51-60; *Bay v.*

*Western Pac. R. Co.*, 595 F.2d 514, 515 (9th Cir. 1979). The statute of limitations for

FELA claims is three years. 45 U.S.C. § 56. FELA's limitations period begins "when

the accumulated effects of the deleterious substance manifest themselves." *Urie v.*

*Thompson*, 337 U.S. 163, 170 (1949).

Unless Nelson can establish some basis to toll the limitations period or equitably

estop BNSF from asserting the limitations period as a defense, it is indisputable that the

limitations period on Nelson's claim has expired.

**C.     Equitable Tolling & Equitable Estoppel**

The Ninth Circuit recognizes two means to modify the statute of limitation

periods in cases such as this: (1) equitable tolling and (2) equitable estoppel. *Naton v.*

*Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981). "Equitable estoppel focuses

primarily on the actions taken by the defendant in preventing a plaintiff from filing suit,

whereas equitable tolling focuses on the plaintiff's excusable ignorance of the

limitations period and on lack of prejudice to the defendant." *Santa Maria v. Pacific*

*Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (citing *Naton,* 649 F.2d at 696).

**1.     Equitable Tolling**

"Equitable tolling does not depend on any wrongful conduct by the defendant to

prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay

by the plaintiff." *Santa Maria v. Pacific Bell*, 202 F.3d at 1178. While "the equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, it has been applied sparingly. Courts have been generally unforgiving, however, when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Scholar v. Pacific Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992). The Ninth Circuit recognizes that a plaintiff is required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute holding that "[t]here is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless." *Id.* at 268 (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242 (11th Cir. 1982)).

Nelson argues that equitable tolling should apply in his case because he was unaware of and did not personally agree to the agreement[1] made by and between Bremseth and BNSF's counsel on behalf of their respective clients. However, absent egregious circumstances, Nelson is bound by the tactical decisions of his counsel. *Kung v. FOM Inv. Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977). In short, Nelson cannot simply plead ignorance of his own attorney's actions or inactions to obtain equitable tolling. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *see also Lawrence v. Florida*, 549 U.S. 327, 335-336, (2007) ("attorney's mistake or negligence will not necessarily support equitable tolling").[2]

As for egregious conduct warranting a tolling period, a plaintiff "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v.*

---

[1]As discussed above, the agreement expressly contemplated that a statute of limitations defense could be asserted by BNSF if Nelson failed to refile his case in the event that he could not settle his claims with Thomassen.

[2]As will be discussed below, Bremseth represented Nelson at all relevant times during the applicability of the tolling agreement at issue in this case. Therefore, any argument by Nelson to the contrary is rejected as discussed herein.

*Castro*, 292 F.3d 1063, 1065, (2002) (citing *United States v. Marolf*, 173 F.3d 1213, 1218 n. 3 (9th Cir. 1999)). Evidence of "counsel's miscalculation and negligence in general do not constitute 'extraordinary circumstances' sufficient to warrant equitable relief." *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001).

Here, Nelson testified that he expected to go to trial in the absence of a settlement. Dkt. 17-1 at 38, 59:17-21. The facts establish that Bremseth intended to refile Nelson's complaint because he prepared a complaint (Dkt. 17-2 at 27, 27:22-25) and served it on BNSF (Dkt. 20-2 at 7), yet the complaint was never formally filed (Dkt. 20-2 at 7-8). Bremseth served BNSF just a few days after the deadline had run for settlement and refiling. While Bremseth's actions/inactions may or may not be considered negligent, they are not egregious for purposes of equitable tolling. *See Frye*, 273 F.3d at 1146.

Based on the foregoing, equitable tolling is not applicable to Nelson's case.

### 2.    Equitable Estoppel

Nelson maintains that BNSF should be estopped from raising the statute of limitations because Nelson "relied on the [Thomassen's] assurances that the railroad would settle the claim, [so BNSF] must in equity be estopped to plead the statute," and because Nelson "was lulled into a false sense of security and lead to believe that [BNSF] railroad would settle his claim without the need for further litigation." Dkt. 16 at 12. Also, according to Nelson, BNSF "knew of and exploited" his "diminished mental capacity." *Id.*

Equitable estoppel focuses on a defendant's wrongful actions which prevent a plaintiff from asserting his claim. *Santa Maria*, 202 F.3d at 1176.

> The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.

1

2      *Glus v. Brooklyn Eastern Terminal*, 359 U.S. 231, 235 (1959).

3          The Ninth Circuit explained that equitable estoppel "comes into play if the

4      defendant takes *active steps to prevent the plaintiff from suing in time*, as by promising

5      not to plead the statute of limitations . . . . Equitable estoppel in the limitations setting is

6      sometimes called fraudulent concealment." *Santa Maria*, 202 F.3d at 1176 (emphasis

7      added). To determine whether equitable estoppel applies, courts focus on the actions

8      taken by a defendant which allegedly prevented a plaintiff from filing suit. The general

9      equitable principle that "no man may take advantage of his own wrong" is frequently

10     "employed to bar inequitable reliance on statutes of limitations." *Glus*, 359 U.S. at

11     232-33.

12         The Supreme Court has held that despite the statute of limitations, a plaintiff who

13     brings suit under FELA must be given an opportunity to prove allegations that a

14     defendant's conduct, or its responsible agent's conduct, justifiably misled plaintiff into a

15     good faith belief that he or she could begin an action any time and that such reliance

16     was justified. *Id*. at 235. Accordingly, in *Atkins v. Union Pacific R. R. Co.*, the Ninth

17     Circuit concluded that a defendant is estopped from asserting a statute of limitations

18     defense if a plaintiff alleges facts that show: (1)"the defendant knew or suspected [the

19     plaintiff] was unrepresented"; (2) "[the defendant] knew or suspected the plaintiff had a

20     limited ability to protect his own interests;" and (3) "if [the plaintiff] relied on the

21     claims agent's representations that the railroad would settle the claim." 685 F.2d 1146,

22     1149 (9th Cir. 1982).

23              a.       **Unrepresented or Unprotected**

24         Nelson maintains that "BNSF induced [Nelson's] attorney to dismiss [Nelson's]

25     timely filed lawsuit and to withdraw from any further active participation in the

26

27

28

ORDER - 8

settlement negotiations." Dkt. 16 at 11. Nelson's position is unsubstantiated by the facts of his case.

Nelson was represented during the mediation and prior to the expiration of the statute of limitations. In fact, Bremseth corresponded with Thomassen to extend the settlement deadline, asked whether he needed to refile the case, and then subsequently caused service of a copy of the unfiled complaint on BNSF. Nelson also concedes that he expected Bremseth to take care of refiling. Dkt. 20-4 at 10, 29:1-14. In light of these indisputable facts, the Court cannot reasonably shift the responsibility to BNSF for any misunderstandings, or false sense of security on the part of Nelson regarding the mediation agreement. As discussed above, "the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his client." *In re Hill*, 775 F.2d 1385, 1387 (9th Cir. 1985); *see also Reed v. Ross*, 468 U.S. 1, 14 (1984) (stating "absent exceptional circumstances, a [party] is bound by the tactical decisions [of his] counsel").

### b.    Justifiable Reliance

Nelson alleges that he was tricked or "lulled into a false sense of security and lead to believe [BNSF] would settle his claim without the need for further litigation." Dkt. 16 at 12. Specifically, he alleges that Thomassen "committed that if Mr. Bremseth dismissed [Nelson's] lawsuit and withdrew from the case, Thomassen would deal directly with Plaintiff and settle the case." Dkts. 16 at 5 & 17-2 at 23, 12:9-12. Nelson maintains that these representations "induced both [Nelson] and his attorney to believe that BNSF would in fact settle the case." Dkts. 16 at 11 & 17-2 at 26, 23:11-14.

However, the mediation agreement is not ambiguous and the facts establish that Bremseth was well aware that if settlement negotiations failed, Nelson was required to refile on or before July 31, 2009, to avoid a statute of limitations defense. Dkt. 21-1 at 2. Indeed, the agreement expressly contemplated that, in the absence of settlement,

Nelson would refile. Further still, Bremseth re-adopted the terms of the mediation agreement when he secured an extension of the deadline to refile. Dkts. 13-2 at 6 & 21-1 at 2-4.

Thus, contrary to Nelson's assertions that he was misled, the Court finds that the facts conclusively establish that BNSF's actions were forthright. The mediation agreement unambiguously made clear whether and on what basis BNSF would be permitted to raise the statute of limitations defense should Nelson refile his case. BNSF extended the filing deadline by 30 days. BNSF acted according to the expectation that Nelson's complaint would be refiled if settlement talks were unsuccessful. Dkts. 13-2 at 2-4, 8; 20-3 at 8 & 21-1 at 2-4. BNSF also provided Nelson with specific notice eleven days prior to the deadline, that he would need to refile his case when Thomassen wrote to Bremseth stating the following: "I do not think we have any choice but for you to re-file [Nelson's case]," in response to Bremseth's specific inquiry about the need to refile, which further establishes that Bremseth was still representing Nelson. *See* Dkt. 21-1 at 2.

Therefore, when the facts are construed in the light most favorable to Nelson, the Court concludes that BNSF should not be estopped from asserting a statute of limitations defense.

### c.    Mental Impairment

Nelson contends that BNSF's misconduct is also established because "there is evidence that [Nelson] had a diminished mental capacity that [BNSF] knew of and exploited when BNSF arranged for [Nelson's] attorney to dismiss [Nelson's] lawsuit that was almost ready to go to trial and to have Nelson's attorney withdraw from further active involvement so that BNSF could deal directly with [Nelson]." Dkt. 16 at 12.

However, Nelson has not alleged facts sufficient to establish a mental disability of sufficient severity to invoke equitable estoppel as a defense. First, there are no

medical records indicating that Nelson was suffering any mental impairment, let alone a psychiatric disability, between the April 21, 2009, mediation and the July 31, 2009, filing deadline. Dkt. 17-2 at 9-10, 17, 38. The most recent medical assessment before the Court reported that in June 2008

> [Nelson's t]hought processes were linear and coherent . . . . [and he] did recognize that the communication demands of the conductor position could likely be beyond his capabilitites. [Also, Nelson's j]udgment appeared intact.
>
> ***
>
> He understood and followed directions without difficulty.

*Id.* at 10. Furthermore, Nelson was not disqualified from work at BNSF for any mental impairment; rather, he was disqualified "because of deficits regarding [his] speech clarity and word finding pose[d] a significant safety risk." *Id.* at 17. Second, although Bremseth testified that Nelson "did have residual effects from his stroke" (Dkt 17-2 at 33, 69:13-14), the only impairment Bremseth testified to was "a speech impediment." *Id.*, 68-69. Finally, the Court agrees with BNSF that a review of Nelson's two depositions show that he was and is fully capable of understanding questions, answering truthfully, and maintaining conversations for a long duration of time. *See* e.g.,  Dkts. 20-4, 20-5. The Court notes that one of Nelson's depositions occurred just one month prior to the mediation and that there is no indication of mental impairment or psychiatric disability. Dkt. 20-5. Additionally, there is no report of his inability to work with his counsel. *Id.*

Based on the foregoing, Nelson has failed to establish a mental impairment sufficient to prevent BNSF from now asserting the statute of limitations defense.

### d.    Duty to Inform

Nelson has not adequately established any duty on the part of BNSF that would have required it to inform Nelson of his need to timely file a complaint in this case or

1    face a statute of limitations defense in the event of an untimely filing. Therefore, the

2    Court finds this argument meritless.

3        **3.    Jury Question as a Matter of Right**

4        Because there is no material question of fact in dispute as to whether equitable

5    tolling or equitable estoppel should prevent BNSF from asserting a statute of limitations

6    defense, no jury question exists.

7    **D.    Conclusion**

8        Nelson has not established any viable basis on which this Court could toll the

9    limitations period or estop BNSF from asserting a statute of limitations defense.

10   Therefore, the Court grants summary judgment in favor of BNSF because the statute of

11   limitations bars Nelson's claim.

12                        **IV. ORDER**

13       Therefore, it is hereby **ORDERED** that BNSF's motion for summary judgment

14   (Dkt. 12) is **GRANTED** and the court **DISMISSES with prejudice** Nelson's claims

15   against BNSF. This matter is closed.

16       DATED this 29th day of April, 2011.

17

18

19                        _____

20                        BENJAMIN H. SETTLE
                          United States District Judge

21

22

23

24

25

26

27

28

ORDER - 12